UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARC J. BERN & PARTNERS LLP,

                               Plaintiff,

v.

U.S. LEGAL SUPPORT, INC. and PAUL LUCIDO,

                               Defendants.

**OPINION AND ORDER**

17 Civ. 6771 (ER)

Ramos, D.J.:

      Marc J. Bern & Partners LLP brought this action against Defendants U.S. Legal Support, Inc. ("USLS") and Paul Lucido in New York State Supreme Court. Defendants removed the action to this Court on the basis of diversity jurisdiction, contending that the citizenship of nondiverse Defendant Lucido should be ignored because he was fraudulently joined. Defendants now move to dismiss the Complaint for failure to state a claim, and Plaintiff cross-moves to remand the action to state court. For the reasons discussed below, Plaintiff's cross-motion to remand is GRANTED, and Defendants' motion to dismiss is DENIED as moot.

**I.    Factual and Procedural Background[1]**

      Plaintiff is a law firm operating as a limited liability partnership in New York and is a

---

[1] The following facts, drawn from the Complaint, are presumed to be true for the purposes of Defendants' motion to dismiss, *see Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012), and Plaintiff's cross-motion to remand, *see Weiss v. Hager*, No. 11 Civ. 2740 (VB), 2011 WL 6425542, at *2 (S.D.N.Y. Dec. 19, 2011) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."). The Court may also consider the parties' affidavits and attached exhibits in deciding the motion to remand. *See Gov't Emps. Ins. Co. v. Saco*, Nos. 12 Civ. 5633 (NGG) (MDG), 15 Civ. 634 (NGG) (MDG), 2015 WL 4656512, at *3 (E.D.N.Y. Aug. 5, 2015) ("Because this is a jurisdictional inquiry, a court can look beyond the face of the complaint in deciding a motion to remand.").

citizen of New York.[2]  Compl. ¶ 4, Doc. 1, Ex. A.  USLS is a corporation providing litigation support services which is organized under the laws of Texas and has a principal place of business in Texas.  *Id.* ¶¶ 5, 11.  Lucido is a USLS sales employee and is a citizen of New York.  *Id.* ¶¶ 7, 12.

USLS "touts itself as one of the leading providers of litigation services and the only litigation support company that provides court reporting, record retrieval, eDiscovery, and trial services to major corporations and law firms nationwide."  *Id.* ¶ 11.  "Over the years," Lucido developed a relationship with Plaintiff, and they entered into discussions regarding USLS providing services to Plaintiff.  *Id.* ¶¶ 13–14.

In or about 2015, when Lucido was attempting to convince Plaintiff to retain USLS, he allegedly made several misrepresentations.  *Id.* ¶ 57.  Specifically, Lucido told Plaintiff that all charges stemming from USLS's services for a particular client matter would not become due until the conclusion of that matter, and those charges would be waived if the matter did not result in a recovery for the client.  *Id.* ¶¶ 15, 57–58.  Relying on these misrepresentations, Plaintiff decided to retain USLS for record retrieval and court reporting services.  *Id.* ¶¶ 16–17, 62.  However, contrary to Lucido's statements, USLS "prematurely demanded payment on its invoices."  *Id.* ¶ 2.  Plaintiff incurred unspecified damages as a result of Lucido's false

---

[2] The Complaint does not disclose the citizenship of Plaintiff's partners or members, which is necessary to the diversity analysis.  *See Mudge Rose Guthrie Alexander & Ferdon v. Pickett*, 11 F. Supp. 2d 449, 451 (S.D.N.Y. 1998) ("[A]n LLP . . . must be treated for diversity purposes as a citizen of every state of which any of its members is a citizen."); *see also Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("'[T]he citizenship of partnerships and other unincorporated associations is determined by the citizenship of [their] partners or members.'  The state of organization and the principal place of business of an unincorporated association are legally irrelevant." (second alteration in original) (footnote omitted) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010))).  Nonetheless, the parties assume that Plaintiff is a citizen of New York, and the Court does as well.  *See* Notice of Removal ¶ 5, Doc. 1; Pl.'s Mem. 2, Doc. 15.

statements, and paid USLS a total of $286,517.18 over the course of several payments. *Id.* ¶¶ 19, 63.

In addition, the Complaint alleges that USLS was unable to retrieve records in a timely manner, often taking over five months to fulfill Plaintiff's requests for records. *Id.* ¶ 20. USLS's delays in retrieving records caused corresponding delays in Plaintiff's client matters, forcing Plaintiff to hire another records retrieval company to obtain needed records. *Id.* ¶¶ 26–27. On or about March 6, 2017, Plaintiff sent USLS a letter instructing USLS to cease its retrieval of medical records due to the delays. *Id.* ¶ 21.

Plaintiff also undertook a review of thousands of USLS's invoices and discovered "pervasive deceptive and unauthorized charges." *Id.* ¶ 22. For example, USLS charged an "Authorization Processing Fee" or "Base Authorization Fee" even though Plaintiff never authorized and was never told about these fees, a "Rush Service Fee" even though Plaintiff almost never requested rush service and even though USLS's services were unacceptably slow, and a "Services Rendered" fee on invoices for services that had been canceled. *Id.* ¶¶ 23–25, 29–30. Plaintiff also audited USLS's "Custodian Fees" and "Record Retrieval Fees" and found that USLS charged Plaintiff several hundred dollars more than the amounts that were actually paid to the records providers. *Id.* ¶ 31.

The Complaint alleges that Plaintiff and USLS formed separate contracts each time Plaintiff requested records from USLS, and USLS breached its contractual obligations by "failing to respond to and to fill record requests in a timely manner, routinely and pervasively charging [Plaintiff] for services it did not request or authorize, and charging [Plaintiff] for services that [USLS] failed to perform properly." *Id.* ¶¶ 88, 90.

USLS also allegedly overcharged for its court reporting services by enlarging the margins of deposition transcripts beyond standard sizes and including the deponent's name in a separate line of text on each page (instead of in a header). *Id.* ¶¶ 32–34. These practices increased the length of transcripts, for which USLS charged on a per-page basis. *Id.* ¶¶ 33–34.

Plaintiff filed suit in New York State Supreme Court, New York County, alleging violations of New York General Business Law § 349, common-law fraud, unjust enrichment, and breach of contract against USLS, and seeking damages, a declaratory judgment, and other relief. *Id.* ¶¶ 37–55, 75–93 (counts 1, 2, 5, 6, and 7). Plaintiff also asserted claims for common-law fraud and negligent misrepresentation against Lucido. *Id.* ¶¶ 56–74 (counts 3 and 4). Defendants removed the action to the Southern District of New York on the basis of diversity jurisdiction, contending that although Plaintiff and Defendant Lucido are both citizens of New York, Lucido's citizenship should be disregarded because he was fraudulently joined. Notice of Removal ¶¶ 4–5, Doc. 1. Defendants now move to dismiss the Complaint for failure to state a claim, Doc. 9, and Plaintiff cross-moves to remand the action to state court, Doc. 14.

**II.  Motion to Remand**

"Although Defendants' motion to dismiss the Complaint was filed before Plaintiff['s] motion for remand, the Court first must decide the motion for remand since it raises questions of subject matter jurisdiction." *Abdale v. N. Shore–Long Island Jewish Health Sys., Inc.*, No. 13 Civ. 1238 (JS) (WDW), 2014 WL 2945741, at *2 (E.D.N.Y. June 30, 2014); *see Appell v. Fleet Norstar/Fin. Grp.*, 104 F.3d 352, 1996 WL 665670, at *2 (2d Cir. 1996) (unpublished table opinion) (holding that it was error to "consider[] the merits of the defendants' motion [to dismiss] prior to resolving the jurisdictional issues presented in the motion to remand").

## A. Legal Standard

The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). Therefore, the party seeking removal bears the burden of proving that the jurisdictional and procedural requirements of removal have been met. *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)).

"Where removal is based on diversity jurisdiction, there must be complete diversity of citizenship between the plaintiff(s) and the defendant(s)." *Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*, No. 14 Civ. 03303 (LGS), 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014). However, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998).

> In order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, *or that there is no possibility*, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.

5

*Id.* at 461 (emphasis added). "[U]nder the doctrine of fraudulent joinder, courts will overlook the presence of a defendant who defeats removal 'if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court.'" *Khan v. CXA-16 Corp.*, No. 16 Civ. 6672 (RA), 2017 WL 1906885, at *2 (S.D.N.Y. May 5, 2017) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011)).

A defendant alleging fraudulent joinder "bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004). "Courts examining a complaint to determine whether a party has been 'fraudulently' joined will subject the complaint 'to less searching scrutiny than on a motion to dismiss for failure to state a claim.'" *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 121 F. Supp. 3d 379, 382 (S.D.N.Y. 2015) (quoting *Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000)).

### B.     Discussion

The parties agree that complete diversity would not exist if Lucido is properly joined as a party. *See* Notice of Removal ¶ 5; Pl.'s Mem. 2, Doc. 15. However, Defendants argue that Lucido's citizenship must be disregarded under the fraudulent-joinder doctrine because there is "no possibility" of recovery against him. Notice of Removal ¶¶ 18–19. The Complaint asserts two claims against Lucido, common-law fraud and negligent misrepresentation (counts 3 and 4), so the Court must determine whether there is any possibility that one of these claims could survive. *See Kuperstein v. Hoffman-Laroche, Inc.*, 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("If even one of the plaintiff's claims against a non-diverse defendant can survive, the action must be remanded.").

1. **Fraud**

Under New York law, a claim for fraud must allege "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996).

Defendants argue that Plaintiff has not alleged the requisite injury. Notice of Removal ¶ 21. Under the "out-of-pocket" rule, the injury must be "actual pecuniary loss sustained as the direct result of the wrong." *Id.* (quoting *Reno v. Bull*, 124 N.E. 144, 146 (N.Y. 1919)). "Those losses must be the direct, immediate, and proximate result of the misrepresentation" and "must also be independent of other causes." *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993). "If the fraud causes no loss, then the plaintiff has suffered no damages." *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1163 (N.Y. 2017) (quoting *Sager v. Friedman*, 1 N.E.2d 971, 973 (N.Y. 1936)).

Here, Defendants are correct that at no point in the Complaint does Plaintiff explicitly state that Plaintiff incurred losses resulting from Lucido's misrepresentations. The Complaint alleges that Lucido falsely told Plaintiff that it would not be charged for a particular client matter until the matter concluded, and only if the matter resulted in a recovery for the client. Compl. ¶¶ 15, 57–58. USLS then "prematurely demanded payment on its invoices" in contravention of Lucido's statements. *Id.* ¶ 2. The Complaint does not specify any charges that Plaintiff paid before they were due at the conclusion of a particular matter, nor does the Complaint specify any charges that Plaintiff paid that should have been waived because the matter was unsuccessful (the Complaint also does not specify that USLS demanded payment on such charges). The

7

Complaint only alleges that Lucido's statements resulted in "damages," which presumably were some portion of the $286,517.18 that Plaintiff paid to USLS. *Id.* ¶¶ 19, 63.

Nonetheless, although these allegations likely would not withstand a motion to dismiss (particularly under the heightened fraud pleading requirements of Federal Rule of Civil Procedure 9(b)), the relevant question under the fraudulent-joinder doctrine is whether there is any possibility that Plaintiff can allege losses, with all ambiguities resolved in Plaintiff's favor. Because there is a possibility that an allegation can be made that a portion of Plaintiff's payments resulted from Lucido's false promises, the ambiguity in Plaintiff's current allegations regarding losses weighs in favor of remand. *See Korein Tillery, LLC v. Advanced Analytical Consulting Grp., Inc.*, No. 17 Civ. 468 (JPG) (RJD), 2017 WL 4005926, at *4 (S.D. Ill. Sept. 12, 2017) ("While this general pleading may be enough to support dismissal of the complaint—without prejudice and with leave to replead—this pleading shortcoming does not show by clear and convincing evidence that [Plaintiff] cannot establish a fraud cause of action against [Defendant].").

Defendants separately argue that Plaintiff could not have justifiably relied on Lucido's statements—that Plaintiff would not be obligated to pay USLS's invoices unless and until a case had ended in success—because the statements constitute an unenforceable and prohibited agreement to share legal fees with a nonlawyer.[3] Notice of Removal ¶¶ 22–23. "An attorney simply cannot justifiably rely on the representation of his or her adversary which is inconsistent

---

[3] Although Defendants direct this argument toward Plaintiff's fraud claim, it would also apply to the negligent-misrepresentation claim, which also has a reliance element. But in either case, Defendants cannot meet their burden under the fraudulent-joinder doctrine, as will be explained.

8

with existing law . . . ." *LoGalbo v. Plishkin, Rubano & Baum*, 602 N.Y.S.2d 906, 907 (App. Div. 2d Dep't 1993).

New York Rule of Professional Conduct 5.4(a) provides that "[a] lawyer or law firm shall not share legal fees with a nonlawyer" except in certain enumerated circumstances not relevant here. N.Y. Rules of Prof'l Conduct r. 5.4(a). This rule is intended "to protect the lawyer's professional independence of judgment," *id.* cmt. 1, and "is aimed at lawyers who give nonlawyers a stake in the outcome of a particular case or cases," Roy D. Simon & Nicole Hyland, *Simon's New York Rules of Professional Conduct Annotated* 1419 (2017 ed.). This policy could implicate the contingent nature of the arrangement here. On the other hand, Plaintiff responds that USLS's invoices do not constitute "legal fees" because they are expenses paid in the ordinary course from its operating capital, which distinguishes the arrangement from cases where nonlawyers improperly received a portion of client recoveries or firm profits. Pl.'s Mem. 20–21; *cf. Taylor-Burns v. AR Res., Inc.*, 268 F. Supp. 3d 592, 598–99 (S.D.N.Y. 2017); *Ungar v. Matarazzo Blumberg & Assocs.*, 688 N.Y.S.2d 588, 589–90 (App. Div. 2d Dep't 1999). In any event, it is unclear whether Rule 5.4(a) prohibits the arrangement, and given Defendants' burden under the fraudulent-joinder doctrine of showing *no* possibility of recovery, with all ambiguities resolved in Plaintiff's favor, the Court cannot conclude that there is no possibility that Plaintiff could have justifiably relied on Lucido's statements.

Defendants further argue that Plaintiff's fraud claim cannot survive because it is duplicative of Plaintiff's contract claim. Def.'s Mem. Opp. 4, Doc. 16. "[W]here fraud claims are brought alongside contract claims, the fraud claim may only proceed where it will '(i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages

9

that are caused by the misrepresentation and unrecoverable as contract damages.'" *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 519–20 (S.D.N.Y. 2016) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("[A] promise to take some future action which is collateral to the contract can be considered a 'misrepresentation' for purposes of a fraud in the inducement cause of action."). However, the Complaint does not indicate that Lucido's promises concerning the timing and waiver of charges were incorporated into any contract, and neither party has submitted evidence to the contrary. Rather, the only allegations in the Complaint concerning contracts state that Plaintiff and USLS formed separate contracts for each records request and the contract terms related to the particular services requested and the timeliness of those services. *See* Compl. ¶¶ 88, 90 (alleging that USLS breached its contractual obligations by "failing to respond to and to fill record requests in a timely manner, routinely and pervasively charging [Plaintiff] for services it did not request or authorize, and charging [Plaintiff] for services that [USLS] failed to perform properly"). Based on these allegations, Lucido's promises appear to be collateral to the contracts. Defendants have not shown by clear and convincing evidence, beyond any possibility, that the fraud claim is duplicative of the contract claim.

Defendants also suggest that Lucido cannot be liable for a tort because he was a mere employee (rather than an officer) acting within the scope of his employment. Def.'s Mem. Opp. 9–11. That is clearly wrong. It is well established that employees are liable for their torts, even when acting within the scope of their employment. *See, e.g.*, *Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 434 (2d Cir. 1995) (holding that immunity for corporate agents "does not extend to employees who commit fraud"); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 701 (S.D.N.Y. 2015) ("A corporate employee or officer who himself 'participates in a

10

tort, even if it is in the course of his duties, may be held individually responsible.'" (quoting *Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc.*, 603 F. Supp. 339, 341 (S.D.N.Y. 1985))); *White v. Nat'l Home Prot., Inc.*, No. 09 Civ. 4070 (SHS), 2010 WL 1706195, at *5 (S.D.N.Y. Apr. 21, 2010) ("Where a plaintiff asserts tort claims such as for fraud or fraudulent misrepresentation, there is no need to pierce the corporate veil in order to hold corporate officers or employees individually liable for their own acts of fraud.").[4]

Accordingly, although the fraud claim against Lucido is pleaded imprecisely and may not withstand a motion to dismiss, there is a possibility that Plaintiff can assert it, which is sufficient to survive the fraudulent-joinder inquiry.

### 2. Negligent Misrepresentation

Under New York law, a claim for negligent misrepresentation must show "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007). "A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (quoting *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)). Factors bearing on this inquiry include "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or

---

[4] This argument also fails with respect to the negligent-misrepresentation claim for the same reason. *See also Mathis v. Yondata Corp.*, 480 N.Y.S.2d 173, 174–75, 177–78 (Sup. Ct. 1984) (holding that "an agent may be held personally liable for negligent misrepresentation to one who, in reliance upon such representations, enters into a contractual relationship with the agent's principal").

11

confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Kimmell*, 675 N.E.2d at 454.

A defendant's "superior knowledge of the particulars of its own business practices is insufficient" to establish a special relationship, and "[g]enerally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 235–36 (App. Div. 1st Dep't 2011). On the other hand, "[c]ourts have found a special relationship and duty, for example, where defendants sought to induce plaintiffs into a business transaction by making certain statements or providing specific information with the intent that plaintiffs rely on those statements or information." *Century Pac., Inc. v. Hilton Hotels Corp.*, No. 03 Civ. 8258 (SAS), 2004 WL 868211, at *8 (S.D.N.Y. Apr. 21, 2004).

Here, the Complaint contains allegations that are, albeit sparsely pleaded, relevant to each of the factors in the special-relationship inquiry. With respect to Lucido's expertise, the Complaint alleges that his employer, USLS, "touts itself as one of the leading providers of litigation services and the only litigation support company that provides court reporting, record retrieval, eDiscovery, and trial services to major corporations and law firms nationwide." Compl. ¶ 11. In support of a relationship of trust or confidence, the Complaint alleges that Lucido's relationship with Plaintiff developed "[o]ver the years." *Id.* ¶ 13. And the Complaint alleges that "Lucido was aware that [Plaintiff] would use the information he misstated for a particular purpose in deciding to engage [USLS] to provide services for client matters." *Id.* ¶ 71. Under these circumstances, Defendants have not carried their burden in showing there is no possibility that Lucido has a special relationship and duty.

Accordingly, there is a possibility that Plaintiff can recover on its negligent-misrepresentation claim against Lucido.

## III. Conclusion

"[W]hile defendants may ultimately prevail in state court, the Court cannot say that there is no possibility that [Plaintiff] will prevail and '[a]ny possibility of recovery, however slim, weighs against a finding of fraudulent joinder and in favor of remand.'" *Ruiz v. Forest City Enters., Inc.*, No. 09 Civ. 4699 (RJD) (MDG), 2010 WL 3322505, at *3 (E.D.N.Y. Aug. 20, 2010) (third alteration in original) (quoting *DNJ Logistic Grp., Inc. v. DHL Express (USA), Inc.*, 727 F. Supp. 2d 160, 171 (E.D.N.Y. 2010)). Because there is a possibility of recovery against Lucido for both fraud and negligent misrepresentation, his citizenship cannot be disregarded for purposes of diversity jurisdiction. Because Lucido and Plaintiff are both citizens of New York, diversity jurisdiction is lacking. Accordingly, Plaintiff's cross-motion to remand the case to state court is GRANTED, and Defendants' motion to dismiss is DENIED as moot. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 9, 14, and remand the case to the Supreme Court of the State of New York, County of New York.

It is SO ORDERED.

Dated: June 11, 2018
        New York, New York

_____
Edgardo Ramos, U.S.D.J.